[Cite as *White v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-386.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John L. White, | : | |
| Requester-Appellant, | : | |
| | | No. 19AP-85 |
| v. | : | (Ct. of Cl. No. 2018-00762PQ) |
| Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on February 6, 2020

**On Brief:** *John L. White,* pro se.

**On Brief:** *Dave Yost*, Attorney General, *Jared S. Yee,* and *Thomas E. Madden,* for respondent-appellee.

APPEAL from the Court of Claims of Ohio

BRUNNER, J.

{¶ 1} Requester-appellant, John L. White, appeals an adverse judgment of the Court of Claims of Ohio entered on January 10, 2019. The judgment held that respondent-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), was not required to provide White certain records he had requested because those records were exempted from disclosure under Ohio's Public Records Law. In reaching its decision, the Court of Claims adopted in part, rejected in part, and modified in part the special master's report and recommendation of November 26, 2018 (the "R&R"). For the reasons that follow, we affirm in part and reverse in part the Court of Claims' judgment.

**I. FACTS AND PROCEDURAL BACKGROUND**

{¶ 2} The underlying matter arose from a public records dispute between White and ODRC. White is an attorney and the founder of the Next Step, LLC ("Next Step"), a

company that assists former inmates to find jobs. Next Step formerly had a contract and multiple memoranda of understanding ("MOU") with ODRC. According to ODRC, White had notified ODRC of potential litigation over alleged breach of the contract and the MOU most recently executed between the parties.

{¶ 3} On April 25, 2018, White sent ODRC a letter making 23 public records requests. White requested records related to a contract and the MOUs ODRC had executed with Next Step during the period of 2011 to 2018. Six days later, on May 1, 2018, White commenced the underlying action by filing a complaint in the Court of Claims pursuant to R.C. 2743.75, alleging a denial of access to public records in violation of R.C. 149.43(B).

{¶ 4} The matter was assigned to a special master, who ordered mediation in accordance with R.C. 2743.75. During the ongoing mediation process, ODRC provided White with nearly 6,000 pages of responsive records, with explanations and legal authority for a few dozen pages that contained redactions based on attorney-client privilege. Mediation failed to resolve all the parties' disputes and the matter returned to the special master for resolution.

{¶ 5} On August 10, 2018, ODRC filed a motion to dismiss, or in the alternative, a motion for summary judgment, stating that all but one of White's records requests had been withdrawn or resolved during mediation. ODRC's motion stated in part as follows:

> The only reason mediation in this matter failed to successfully resolve all disputed claims between the parties, is [White's] claims that the assertions of [ODRC's] attorneys of attorney-client communications and attorney work product are not accurate. Based on the documents as they were so disclosed, it is readily and clearly apparent they are protected from disclosure, as asserted by [ODRC's] attorneys. Accordingly, [ODRC] respectfully requests this Court to dismiss [White's] complaint.

(Aug. 10, 2018 ODRC's Mot. to Dismiss or in the Alternative Mot. for Summ. Jgmt. at 5.) Attached to ODRC's motion were the affidavit of Stephen Young, an ODRC in-house counsel, and some exhibits.

{¶ 6} On August 30, 2018, White filed a reply in which he acknowledged he "ha[d] no information that ODRC had failed to provide copies of all existing ODRC records responsive to his requests apart from the disputed claims of attorney-client or attorney work product privilege," which he identified. (Aug. 30, 2018 White's Reply to Special

Master's Order at 1.)  White moved the special master to conduct an in-camera review of each disputed redacted document.

{¶ 7}   The special master granted White's request and ordered ODRC to submit the original, unredacted records under seal with a sur-reply explaining the redactions with specificity.  ODRC complied with the special master's order on September 20, 2018. ODRC withdrew the assertion of attorney work product privilege but continued to assert attorney-client privilege, stating the withheld records were exempt from disclosure because they related directly to the drafting, timing, and legal guidance of the proposed terms of the MOU and were communications between two ODRC attorneys and their clients, employees of ODRC.

{¶ 8}   On October 1, 2018, the special master ordered ODRC to file a supplemental sur-reply regarding the redactions on or before October 17, 2018.  The record indicates that ODRC filed a supplemental sur-reply, but not until October 23, 2018.

{¶ 9}   The special master reviewed in camera the documents ODRC had withheld and, on November 26, 2018, issued his R&R stating that only two of the claimed exemptions were subject to attorney-client privilege and all the remaining documents should be disclosed.  Thus, the special master found that "[O]DRC has failed to meet its burden to prove by clear and convincing evidence that any other material meets all the factors of common-law attorney client privilege."  (Nov. 26, 2018 R&R at 8.)  The special master recommended that the Court of Claims grant White's claim for relief for partial production of the withheld records and deny White's remaining claims.  The R&R contains a table describing the nature of each disputed document's content and stating whether it was protected by attorney-client privilege.  The special master also recommended that costs be assessed to White "[b]ecause the claim was filed prematurely, and the vast majority of request were either withdrawn or satisfied within a reasonable period of time."  (R&R at 9.)

{¶ 10}  On December 12, 2018, ODRC filed objections to the R&R pursuant to R.C. 2743.75(F)(2), asserting "that the R&R on attorney-client privilege is contrary to law and facts and does not consider [ODRC's] Supplemental Sur-Reply ("SS-R")."  (Dec. 12, 2018 Objs. at 1.) ODRC asked the Court of Claims to "adopt in part (i.e., 'assessment of court costs' against [White] and finding two paragraphs 'constitute [attorney-client] legal opinion') and reject in part, the Special Master's [R&R] based on * * * errors relative to the

Special Master's findings of fact and conclusions of law, independently review the objected matters, find * * * records are privileged attorney-client communications, and sustain [ODRC's] objections to the Special Master's [R&R]. Special Master's recommendation for full production of the withheld documents except for two paragraphs should not be adopted." *Id.*

{¶ 11} White filed his response to ODRC's objections on December 28, 2018. White argued that ODRC's objections should be denied because "the correct law was applied and there is no error on the face of the award." (Dec. 28, 2018 Resp. to Objs. at ¶ 16.) With respect to the sanction imposed on him by the special master, White stated that he would pay the ordered sanction "if it is upheld in full," but stated further that the special master "was incorrect about the timing and history" of his public records request. *Id.* at ¶ 23. White conceded, however, that he was partly at fault "for not making clear the history of his [public records request] and addressing ODRC's repeated mischaracterization of the timing of [his] initial request for public records under the OPRA law."[1] *Id.* at ¶ 24.

{¶ 12} By judgment entry issued January 10, 2019, the Court of Claims found that the special master had applied the incorrect standard of proof to ODRC's claim that the records in question were not subject to the OPRA. The Court of Claims states in part:

> Based on the ordinary application of statutory law and case law, it therefore follows that under R.C. 2743.75 an allegedly aggrieved party is required to show an entitlement to relief by clear-and-convincing evidence, while under R.C. 2743.75 a party who claims that an exception applies is required to prove that the requested records fall squarely within the exception by a preponderance of the evidence.
>
> The special master's application of the standard of proof relative to [ODRC's] claim of attorney-client privilege is erroneous because the special master applied a clear-and-convincing standard of proof, instead of applying a preponderance of the evidence standard of proof relative to ODRC's claim of an exception to disclosure.
>
> In *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21, the Ohio Supreme

---

[1] White states in his May 1, 2018 complaint that he had communicated his requests under the Ohio Public Records Act ("OPRA") by email three times and then via "USPS" (U.S. Mail) on April 25, 2018. He further states in his complaint that ODRC had not acknowledged receiving the requests, although ODRC had been asked to do so.

> Court stated: "Under the attorney-client privilege, '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.' *Reed v. Baxter* (C.A.6. 1998), 134 F.3d 351, 355-356; *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-3358, 790 N.E.2d 817, ¶ 12. Except under circumstances not relevant here, only the client can waive the privilege. * * *." * * *.

(Jan. 10, 2019 Decision at 4-5.)

{¶ 13} The Court of Claims concluded from its review of the disputed records and ODRC's objections and supplemental sur-reply that "the records are protected by attorney-client privilege because the communications concern communications by [O]DRC attorneys that facilitates the rendition of legal services, or advice." *Id.* at 5. The Court of Claims cited in support of its conclusion *State ex rel. Toledo Blade Co. v. Toledo-Lucas Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, ¶ 271, and *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991). The Court of Claims found well-taken ODRC's contention that the special master's recommendation relative to attorney-client privilege should not be adopted.

{¶ 14} The Court of Claims found that the special master's recommendation to assess court costs on White constituted a sanction, which was inconsistent with the holding of *Symons v. Eichelberger*, 110 Ohio St. 224 (1924), that costs are not to be considered a penalty. The Court of Claims found, however, "as a matter of equity, that the circumstances of this case warrant the assessment of court costs against White, because, as the special master notes, White's claim 'was filed prematurely, and the vast majority of requests were either withdrawn or satisfied within a reasonable period of time.' (R&R, 9.)" (Jan. 10, 2019 Decision at 6.)

{¶ 15} The Court of Claims sustained ODRC's objections, and adopted in part, rejected in part, and modified in part the special master's R&R. The Court of Claims adopted the R&R as modified and did not adopt the special master's recommendation to grant White's claim for relief.

{¶ 16} White now appeals the judgment of the Court of Claim.

## II. ASSIGNMENTS OF ERRORS

{¶ 17} White presents two assignments of error for our review:

1. Requester/appellant contends that the trial judge below incorrectly modified the Report and Recommendation ("R&R") of Special Master ("SM") Jeffrey W. Clark, (R., #34), the result of which error was to permit the respondent/appellee ("[O]DRC") to withhold public records subject to the Ohio Public Records Act, R.C. 149.43, *et seq.* The specific error was in modifying the SM's R&R to apply the incorrect standard of proof to the [O]DRC's efforts to utilize one of the enumerated exceptions to the Ohio Public Records [A]ct, the common law attorney-client privilege. (R, #46)

2. The trial court incorrectly and unfairly assessed the costs of this public records request against requester/appellant as a matter of equity. (R, #46)

## III.  LAW AND DISCUSSION

### A.  First Assignment of Error

{¶ 18} White filed his complaint pursuant to R.C. 2743.75, which provides a statutory procedure as an alternative to a mandamus action to resolve disputes over public records requests.  R.C. 2743.75(A) states:

In order to provide for an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records in violation of division (B) of section 149.43 of the Revised Code, except for a court that hears a mandamus action pursuant to that section, the court of claims shall be the sole and exclusive authority in this state that adjudicates or resolves complaints based on alleged violations of that section. The clerk of the court of claims shall designate one or more current employees or hire one or more individuals to serve as special masters to hear complaints brought under this section. All special masters shall have been engaged in the practice of law in this state for at least four years and be in good standing with the supreme court at the time of designation or hiring. The clerk may assign administrative and clerical work associated with complaints brought under this section to current employees or may hire such additional employees as may be necessary to perform such work.

{¶ 19} White contends the Court of Claims erred in modifying the R&R with respect to the standard of proof applicable to ODRC's assertion that the records it withheld fell within a statutory exemption, and thus were not public records.  He argues that ODRC was

required to prove by clear and convincing evidence that the records it withheld were attorney-client privileged, and therefore not records for the purposes of OPRA, R.C. 149.43, et seq.

{¶ 20} ODRC's brief observes that White has filed suit against ODRC in a related case, alleging breach of the MOU "that is the subject matter * * * contained in all of the redacted attorney-client privileged communications currently at issue in this appeal. *TNSWS, LLC. v. Ohio Department of Rehabilitation and Correction*, Court of Claims of Ohio Case No. 2018-01272JD." (ODRC Brief at 5.) ODRC asserts that "[i]t is uncontroverted that White was seeking pre-litigation discovery through his public records request." *Id.* ODRC contends that White "is now attempting to assert, contrary to established precedent, that the standards of attorney-client privilege in public records request cases should be lower than that applied for the same information sought through civil discovery." *Id.*

{¶ 21} It is the well-settled law of Ohio that "[e]xceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, paragraph two of the syllabus.

{¶ 22} ODRC asserts that the requested records are exempt from disclosure because of the attorney-client privilege exception. It is well-established that the attorney-client privilege "is one of the oldest recognized privileges for confidential communications." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, ¶ 19. Modern courts have affirmed that "the privilege is founded on the premise that confidences shared in the attorney-client relationship are to remain confidential." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 660 (1994). Such affirmations recognize the importance of permitting "complete freedom of disclosure by a client to his attorney without fear that any facts so disclosed will be used against him." *Leslie* at ¶ 20.

{¶ 23} R.C. 149.43(A)(1)(v) exempts "[r]ecords the release of which is prohibited by state or federal law" from the definition of "public record." "The attorney-client privilege, which covers records of communications between attorneys and their government clients

pertaining to the attorneys' legal advice, is a state law prohibiting release of these records." *State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 542 (2000), citing *State el rel. Nix v. Cleveland*, 83 Ohio St.3d 379, 383 (1998). "In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship." *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, ¶ 27, citing *State ex rel. Toledo* at ¶ 24, quoting *Leslie* at ¶ 18.

{¶ 24} The Supreme Court of Ohio set forth an eight-part test for the attorney-client privilege in *Leslie* at ¶ 21, stating:

> Under the attorney-client privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter* (C.A. 6. 1998), 134 F.3d 351, 355-356; *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Oho-3358, 790 N.E.2d 817, ¶ 12. Except under circumstances not relevant here, only the client can waiver the privilege. * * *

{¶ 25} Applying the test set forth in *Leslie* to this matter, the relevant question is whether the records ODRC withheld provided "legal advice" from ODRC's attorneys to their clients. In *State ex rel. Toledo Blade* at ¶ 27-28, the Supreme Court stated:

> The attorney-client privilege "does not require the communication to contain purely legal analysis or advice to be privileged. Instead, if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged." *Dunn*, 927 F.2d at 875 [*Dunn v. State Farm Fire & Cas. Co.* (C.A.5, 1991), 927 F.2d 869]. "The fact that the task performed could have been accomplished as easily by a nonlawyer, does not necessarily mean that the privilege will not apply." 1 Rice, Attorney-Client Privilege in the United States (2d Ed.1999) 67, Section 7:9.
>
> The applicable test espoused by these authorities does not differ much from the test the court set forth for client communications to attorneys in *Leslie*, 105 Ohio St. 3d 261, 2005 Ohio 1508, 824 N.E.2d 990, at [¶]29: "The [attorney-client] privilege applies when legal advice of any kind is sought

from the legal advisor in that capacity and the client's confidential communication relates to that purpose." * * *

{¶ 26} Having conducted an in camera inspection of the records ODRC withheld, and applying the *Leslie* test to these records, we conclude that the many, but not all, of the records do provide legal advice from ODRC attorneys to their clients. Consequently, White is not entitled to the withheld records for which ODRC has met its burden of establishing the applicability of the attorney-client privilege, and thus are not public records. White is entitled to receive the remaining withheld records for which ODRC did not establish the applicability of the attorney-client privilege exemption.

{¶ 27} Having independently considered the record and briefs, inspected the records at issue, and reviewed the applicable law, we find that the Court of Claims erred in concluding that all the records ODRC withheld were attorney-client privileged and exempt under R.C. 149.43.

{¶ 28} Accordingly, we find that White is entitled to the withheld records that are not attorney-client privileged, and thus are public records. We deny that part of White's first objection relating to his contention that ODRC was required to establish the attorney-client exemption by clear and convincing evidence.

{¶ 29} White's first assignment of error is sustained in part and overruled in part.

### B.  B. Second Assignment of Error

{¶ 30} In his second assignment of error, White contends that the special master and the trial judge erred in assessing court costs against him for bringing the underlying action prematurely; *i.e.,* only five days after mailing the letter containing his 23-record request.

{¶ 31} We find that the Court of Claims' decision to assess court costs against White is supported by the record. Consequently, we will not disturb it.

{¶ 32} White's second assignment of error is overruled.

## IV.  CONCLUSION

{¶ 33} Based on the foregoing reasons, we find that the Court of Claims erred in concluding that all of the records ODRC withheld were exempt under R.C. 149.43. Therefore, we sustain White's first assignment of error in part and overrule it in part. We remand this case to the Court of Claims and return, under seal, the original unredacted

records and also a photocopy of those records with the records that this Court has determined constitute or contain advice from ODRC's attorney(s) to it and/or are confidential communications that are attorney-client privileged redacted.[2] We instruct the Court of Claims to review this Court's redaction of the records and to provide White access to those records which this Court has identified as not constituting or containing advice from ODRC's attorney(s) to it and/or are not confidential communications that are attorney-client privileged.

{¶ 34} Additionally, we overrule White's second assignments of error.

*Judgment affirmed in part, reversed in part;*
*cause remanded with instructions.*

BEATTY BLUNT, J., concurs.
NELSON, J., concurs in part and dissents in part.

NELSON, J., concurring in part and dissenting in part.

{¶ 35} I would affirm the decision of the Court of Claims in full. Therefore, I join with the majority here insofar as it upholds the determinations of privilege by the Court of Claims and affirms the assessment of costs against requester White. But because I think that the majority's construction and application of the accurately cited, controlling precedent may be unduly constricted, I respectfully part company with the majority with regard to the limited materials at issue that it finds not covered by attorney-client privilege (excepting one email that appears already to have gone to the requester).

{¶ 36} The majority states in paragraph 25 that "[a]pplying the test set forth in *Leslie* to this matter, the relevant question is whether the records ODRC withheld provided 'legal advice' from ODRC's attorneys to their clients." That puts the question too narrowly, I think. As the majority recites at paragraph 24, *Leslie* confirms that attorney-client privilege extends to " 'communications relating to' " confidential requests for or provision of " 'legal advice of any kind.' " 2005-Ohio-1508, at ¶ 21 (citations omitted). The scope of the privilege, that is, extends not only to materials from lawyers providing legal advice to their clients, but also to communications by clients to their lawyers seeking or in aid of such advice. That is, as the majority here further quotes the Supreme Court of Ohio, " 'if a

---

[2] The records redacted by this Court will be filed as a separate addendum, under seal, to this opinion for the purpose of protecting the asserted privilege during the time in which further appeals may be pursued.

communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.' " *Toledo Blade*, 2009-Ohio-1767, at ¶ 27 (citation omitted).

{¶ 37} Thus I would have thought, for example, that communications (however mundane) from clients to lawyers with reference to client inquiries often would be privileged. And I would have thought that a communication from a lawyer with drafting instructions (however minimal) and requests for information would in the context of this matter be privileged. As would certain communications between lawyers. And in this context, too, a direct client communication to a lawyer relating to an expressed need for legal guidance seems highly likely to be privileged as well.

{¶ 38} One doesn't automatically make a document privileged, of course, simply by including a lawyer in a list of those copied, or by having a lawyer pass it along. The purposes of each communication have to be fully evaluated. Context does matter, however, and the Court of Claims was appropriately mindful of the need to facilitate the provision of legal advice in the context of impending litigation.

{¶ 39} To the (perhaps relatively quite small) degree that the majority decision here reverses the Court of Claims determinations of privilege, I respectfully dissent. In all other regards, I concur with the majority decision.

_____