[Cite as *Cooke v. Couture Tattoos, L.L.C.*, 2024-Ohio-2590.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CANDACE COOKE | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 2023CA00054 |
| | : | |
| COUTURE TATTOOS LLC, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
Common Pleas, Case No.
2021CV01606

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     July 5, 2024

APPEARANCES:

For Plaintiff-Appellant:

LARRY V. SLAGLE
DONALD P. KOTNIK
2589 Aaronwood Ave. NE
Massillon, OH 44646

PAUL W. FLOWERS
Terminal Tower, 40th Floor
50 Public Square
Cleveland, OH 44113

For Defendants-Appellees:

GEORGE URBAN
116 Cleveland Ave. NW, Suite 808
Canton, OH 44702

PETER C. MUNGER
626 Madison Ave., Suite 400
Toledo, OH 43604

*Delaney, P.J.*

{¶1} Plaintiff-Appellant Candace Cooke appeals the April 27, 2023 judgment entry of the Stark County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### A Missed Step

{¶2} On January 17, 2020, Plaintiff-Appellant Candace Cooke entered a property located in Canton, Ohio. The property was owned by Defendants-Appellees A.P. and Shobhana Yajnik as trustees of the Yajnik Living Trust (hereinafter "Landlord"). Yajnik leased the property to Defendant-Appellee Couture Tattoos LLC dba Couture Tattoos (hereinafter "Tenant"), which operated a tattoo and piercing parlor at the property. On January 17, 2020, Cooke did not come to the business property to obtain a tattoo or piercing. Instead, she was soliciting a donation for an animal rescue charity for which she volunteers.

{¶3} Cooke approached the business counter and informed the staff that she was seeking a charitable donation from Tenant. Tenant staff told Cooke that the person with authority for making a charitable donation was at lunch but would return shortly. Cooke asked the Tenant staff if she could wait for the staff person to return, and the staff agreed.

{¶4} After deciding to wait and being told she could do so, Cooke walked towards the property waiting area. The waiting area consists of a 12-foot wide, stage-like, brown colored, wooden platform. The platform was built on the property in approximately 2007. To access the sitting area on the stage-like platform, there is an approximate eight-inch step up. There is a small red sign stating "watch your step" on the step to the platform,

which can be seen as you approach the platform. On January 17, 2020, the entire top edge of the platform was trimmed in gold. There are no handrails or ramps on the platform. We include Plaintiff's Exhibit A, which is a picture of the waiting area filed with the trial court on November 16, 2022, in response to Landlord and Tenant's motions for summary judgment:



{¶5} Cooke navigated her way up the single step to the platform without issue or incident. Cooke stated on January 17, 2020, there was a couch on the platform, by the windows. There was already a person sitting on the couch in the waiting area. Once on the platform, Cooke sat on the couch.

{¶6} Cooke sat on the couch, speaking with the other person already seated on the couch. After approximately thirty minutes, the staff person returned to the property, and she stood behind the business counter while Cooke remained seated on the couch. The staff person asked Cooke if she was there to see her, to which Cooke responded affirmatively. The staff person motioned for Cooke to come forward to the business counter. Cooke got up from the couch and began walking towards the staff person. As

Cooke was walking forward to leave the platform waiting area to come to the business counter, she missed the step-down off the platform and fell forward to the ground, landing on her right knee. The Tenant called an ambulance and Cooke was taken to a local hospital, where she stayed overnight. Cooke was diagnosed with injuries to her right knee as result of her fall.

**Complaint for Negligence and Nuisance**

{¶7} On January 12, 2022, Cooke filed her amended complaint, alleging causes of action for negligence and nuisance against Landlord and Tenant. Landlord filed a cross-claim against Tenant for indemnification and contribution pursuant to the terms of the parties' lease agreement. Tenant brought a cross-claim against Landlord alleging the same causes of action.

**Summary Judgment**

{¶8} Landlord and Tenant separately moved for summary judgment on Cooke's complaint. Cooke, Landlord, and Tenant responded and replied to the motions for summary judgment pursuant to Civ.R. 56.

{¶9} On April 27, 2023, the trial court issued its judgment entry granting summary judgment in favor of both Landlord and Tenant. The trial court first found that on January 17, 2020, Cooke was a business invitee. The trial court next analyzed the duty of care under the business invitee status to find Cooke's negligence claim was barred by the open and obvious doctrine. Cooke argued that Landlord and Tenant were in violation of the Ohio Building Code, therefore their violation was negligence per se. The trial court found Cooke failed to show that Landlord and Tenant were in violation of any specific statutory provision, therefore there was no negligence per se. Finally, the trial court found

there were no attendant circumstances to abrogate the open and obvious nature of the hazard.

{¶10} It is from this judgment entry that Cooke now appeals.

## ASSIGNMENT OF ERROR

{¶11} Cooke raises one Assignment of Error:

I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE YAJNIK AND APPELLEE COUTURE.

## ANALYSIS

{¶12} In her sole Assignment of Error, Cooke argues the trial court erred in granting summary judgment in favor of Landlord and Tenant. We disagree.

### Standard of Review

{¶13} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the

party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶14} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301 (6th Dist. 1999).

{¶15} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186.

{¶16} We next conduct a de novo review to determine if Tenant and Landlord are entitled to summary judgment on Cooke's claim of negligence. To establish a cause of action for negligence, a plaintiff must demonstrate (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered injury proximately caused by the defendant's breach of duty. *Simmons v. Quarry Golf Club, L.L.C.*, 2016-Ohio-525, ¶ 19 (5th Dist.) citing *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77 (1984).

**Business Invitee**

{¶17} The existence of a duty and the level of care that a defendant owes to plaintiff is established by the plaintiff's relationship to the defendant. In their motion for summary judgment, Landlord and Tenant argued that on the day of her fall and injuries, Cooke held the status of trespasser on the property. Cooke was at the property to solicit a charitable donation from Tenant, not to receive a tattoo or piercing. In its judgment entry granting summary judgment in favor of Landlord and Tenant, the trial court found reasonable minds could only conclude that Cooke was a business invitee on the day of her fall and injuries. Cooke does not raise the trial court's finding of her status as error and Landlord and Tenant have not filed a cross-appeal on the issue. Upon our de novo review, we find no error that Cooke was a business invitee on January 17, 2020, when she came to the property to solicit a charitable donation from Tenant.

{¶18} An invitee is defined as a person who rightfully enters and remains on the premises of another at the express or implied invitation of the owner and for a purpose beneficial to the owner. *Tan v. Marc Glassman, Inc.*, 2019-Ohio-4043, ¶ 19 citing *Broka v. Cornell's IGA Foodliner Inc.*, 2013-Ohio-2506, ¶ 20 (5th Dist.) citing *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315 (1996).

{¶19} A property owner owes its business invitees a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn of hidden dangers. *Thornsley v. Lafferty's Coin-Op Laundry, LLC*, 2022-Ohio-3907, ¶ 40 (5th Dist.) citing *Simmons v. Quarry Golf Club, L.L.C.*, 2016-Ohio-525, ¶ 25 (5th Dist.), citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203 (1985). A premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the

hidden dangers. *Knight v. Hartville Hardware, Inc.*, 2016-Ohio-1074, ¶ 16 (5th Dist.) citing *Jackson v. Kings Island*, 58 Ohio St.2d 357, 358 (1979). However, a premises owner is not an insurer of its invitees' safety against all forms of accidents that may happen. *Paschal* at 204. Invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *See Brinkman v. Ross*, 68 Ohio St.3d 82, 84 (1993); *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus.

### Open and Obvious

{¶20} In their motion for summary judgment, Landlord and Tenant argued the open and obvious doctrine eliminated any duty to warn Cooke of the platform step and is a complete bar to Cooke's claims. The trial court found there was no genuine issue of material fact that the platform step was an open and obvious condition.

{¶21} The business owner is not an insurer of the customer's safety, but it does owe the business invitee a duty of ordinary care to maintain the premises in a reasonably safe condition and to warn of hidden dangers. Under Ohio law, however, a business owner owes no duty to protect an invitee from dangers that are known to the invitee or are so obvious and apparent to the invitee that he or she may be reasonably expected to discover them and protect him or her against them. *Sidle v. Humphrey*, 13 Ohio St.2d 45, 48 (1968). In *Armstrong v. Best Buy Company, Inc.*, the Ohio Supreme Court found a premises owner owes no duty to persons entering the premises regarding dangers that are open and obvious. *Armstrong v. Best Buy Company, Inc.*, 2003-Ohio-2573, paragraph 5 of the syllabus, citing *Sidle* at paragraph 1 of the syllabus. The rationale of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and

take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992).

{¶22} When considering whether a condition is open and obvious, the court must consider the nature of the condition itself, not the plaintiff's conduct in encountering the condition. *Knight v. Hartville Hardware, Inc.*, 2016-Ohio-1074, ¶ 18 (5th Dist.) citing *Jacobsen v. Coon Restoration & Sealants, Inc.*, 2011-Ohio-3563, ¶ 18 (5th Dist.) citing *Armstrong,* 2003-Ohio-2573. The dangerous condition at issue, however, does not actually have to be observed by the plaintiff to be an open and obvious condition under the law. *Kraft v. Johnny Biggs Mansfield, LLC*, 2012-Ohio-5502, ¶ 16 (5th Dist.) citing *Aycock v. Sandy Valley Church of God*, 2008-Ohio-105 (5th Dist.). The determinative issue is whether the condition is observable. *Id.* The landowner's duty is not to be determined by questioning "whether the [condition] could have been made perfect or foolproof. The issue is whether the conditions that did exist were open and obvious to any person exercising reasonable care and watching where she was going." *Jackson v. Pike Cty. Bd. Of Commrs.*, 2010-Ohio-4875, ¶ 18 (4th Dist.) quoting *Orens v. Ricardo's Restaurant*, 8th Dist. Cuyahoga No. 70403, 1996 WL 661024 (Nov. 14, 1996).

{¶23} The alleged hazard in this case is the platform step, approximately 8.25 inches high. The platform step was marked with a warning sign that could be seen when approaching the step from the property entrance. Cooke testified in her deposition that she saw the warning sign. The entirety of the platform edge was trimmed in a gold trim, which Cooke stated was visible to her. There were no handrails or ramps on the platform. There was no warning sign visible when stepping down from the platform. On the date of Cooke's fall, she stated there was a couch on the platform, located by the window. There

was no testimony that the view of the platform step was blocked or obstructed. Cooke successfully navigated the step-up to the platform and sat on the couch for thirty minutes before stepping down from the platform. Cooke testified in her deposition that she knew the cause of her fall when she left the platform, she missed the step.

{¶24} In support of her argument there was a genuine issue of material fact as to whether the platform step-down was an open and obvious condition, Cooke provided the expert testimony of an architect and an architect/human factors expert. One of Cooke's experts contended the hazard of the platform step was not open and obvious, concluding for example:

> Therefore, at the time of the incident, Ms. Cooke's peripheral visual input –
> from her left, her right, overhead, and below her line of sight, played an
> important role in her navigation. As illustrated by preceding Exhibit H, any
> view of the incident step was obstructed by her own body, and thus was not
> safe within her peripheral vision as she approached the incident step. The
> unsafe, deficient, and non-Code compliant nature of the step that caused
> her fall and injury was neither open nor obvious to her.

(Expert Report of Richard L. Zimmerman, R.A.).

{¶25} Cooke contends the trial court did not consider her expert testimony, but we find the expert testimony does not create a genuine issue of material fact as to whether the platform step was an open and obvious condition. The question of whether a condition is open and obvious, and observable is a question of fact within the realm of a layperson. *Ianetta v. Joyce Passov Commercial Property Mgmt., LLC*, 2021-Ohio-4520, ¶ 26 (8th Dist.). Further, we have held that when considering whether a condition is open and

obvious, the court must consider the nature of the condition itself, not the plaintiff's conduct in encountering the condition. *Knight v. Hartville Hardware, Inc.*, 2016-Ohio-1074, ¶ 18 (5th Dist.). We note that in Zimmerman's human factors expert report as to the open and obvious nature of the alleged hazardous platform step, the expert considered how Cooke approached the step by discussing the location of her body, her locomotion, and her visual field in relation to her body, locomotion, and environment. The expert repeatedly concluded, "The unsafe, deficient, and non-Code compliant nature of the step that caused her fall and injury was neither open nor obvious **to her**." (Emphasis added.) We consider the nature of the condition itself and in this case, we find the condition of the platform step-down to be an open and obvious condition. As stated by this Court before, a picture is worth a thousand words. *Bauermeister v. Real Pit BBQ, L.L.C.*, 2014-Ohio-4501, ¶ 22 (5th Dist.). As observed in Plaintiff's Exhibit A, the platform is obvious and recognizable. Cooke navigated the platform step up safely when going to the waiting area. Further, Cooke admitted that missing the step down caused her fall, not the lack of a handrail or ramp. We agree with the trial court that the danger associated with the platform step was open and obvious, not hidden, not concealed from view, or undiscoverable upon ordinary inspection.

**Negligence Per Se**

{¶26} A finding that the platform step was an open and obvious condition does not end the analysis in this case. Cooke contended that the platform violated Ohio Building Code provisions, which she argues prohibits the application of the open and obvious doctrine because it was negligence per se.

{¶27} In *Lang v. Holly Hill Motel, Inc.*, 2009-Ohio-2495, the issue before the Ohio Supreme Court was "whether a violation of an administrative building code provision prohibits application of the open and obvious doctrine and precludes summary judgment on a negligence claim." *Lang* at ¶ 1. The Court was presented with a factual scenario where an elderly couple requested a handicapped-accessible hotel room. The hotel did not have any such rooms available and told them it had an available room that would require them to traverse a single step. The couple agreed to the room, but when they arrived at the room, the couple discovered there were two steps and no handrails. The husband successfully navigated the first step but fell while navigating the second step. He broke his hip and later died as a result of his fall. The wife sued the hotel, arguing the step exceeded the height limitations imposed by the Ohio Basic Building Code and did not have installed handrails alongside the step, as was also required by the Ohio Basic Building Code. The hotel argued that regardless of the violations of the building code, the step constituted an open and obvious condition for which the hotel owed the couple no duty of care.

{¶28} The plaintiffs in *Lang* asked the Court to create an exemption from the open and obvious doctrine for building code violations, which the Court interpreted as asking them to "elevate administrative-rule violations to the level of negligence per se that we applied to statutory violations in *Robinson [v. Bates,* 2006-Ohio-6362]." *Lang* at ¶ 16. The Court had previously held in *Robinson v. Bates*, 2006-Ohio-6362, that although the open and obvious doctrine could excuse a defendant's breach of a common law duty of care, it did not override statutory duties. *Lang,* 2009-Ohio-2495 at ¶ 14 citing *Robinson*, 2006-Ohio-6362, ¶ 25. The distinction between the common law duty and a statutory duty was

because the violation of a statutory duty constituted negligence per se. *Id.* citing *Robinson* at ¶ 23–25. In negligence per se, the plaintiff has proved the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant. *Lang* at ¶ 15 citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565–566 (1998), citing *Swoboda v. Brown*, 129 Ohio St. 512 (1935).

{¶29} The Ohio Supreme Court considered the difference between administrative rules and statutory rules in *Chambers v. St. Mary's School*, 82 Ohio St.3d 563 (1998). In *Chambers*, the Court was asked to find that violations of the Building Code constituted negligence per se. The Court rejected the argument and held that the "violation of an administrative rule does not constitute negligence per se; however, such a violation may be admissible as evidence of negligence." 82 Ohio St.3d 563, syllabus. The *Chambers* Court distinguished between duties arising from statutes, which reflect public policy, and duties arising from administrative rules, which are created by administrative agency employees who act to implement the General Assembly's public-policy decisions. *Lang*, 2009-Ohio-2495 at ¶ 18 citing *Chambers*, 82 Ohio St.3d at 564.

{¶30} The *Lang* Court concluded:

Because administrative-rule violations do not create a per se finding of duty and breach of duty, the plaintiff must present evidence to establish those two prongs of the negligence test. While a violation of the Building Code may serve as strong evidence that the condition at issue was dangerous and that the landowner breached the attendant duty of care by not rectifying the problem, the violation is mere evidence of negligence and does not raise

an irrebuttable presumption of it. As is the case with all other methods of proving negligence, the defendant may challenge the plaintiff's case with applicable defenses, such as the open-and-obvious doctrine. The plaintiff can avoid such defenses only with a per se finding of negligence, which we declined to extend to this context in *Chambers*.

The *Lang* Court ultimately held, "The open-and-obvious doctrine may be asserted as a defense to a claim of liability arising from a violation of the Ohio Basic Building Code." *Lang*, 2009-Ohio-2495 at syllabus. This Court has previously followed *Lang* as to the determination that a Building Code violation does not constitute negligence per se. *See Williams v. Strand Theatre and Cultural Arts Assn., Inc.*, 2019-Ohio-95, ¶ 29-30 (5th Dist.); *Tomasko v. Sohnly*, 2016-Ohio-2698, ¶¶ 40-41 (5th Dist.); *See also, Bauermeister v. Real Pit BBQ, LLC*, 2014–Ohio–4501 (5th Dist.).

{¶31} Cooke argues that Tenant and Landlord were in violation of R.C. 3781.06(A), which reads in pertinent part:

(A)(1) Any building that may be used as a place of resort, assembly, education, entertainment, lodging, dwelling, trade, manufacture, repair, storage, traffic, or occupancy by the public, any residential building, and all other buildings or parts and appurtenances of those buildings erected within this state, shall be so constructed, erected, equipped, and maintained that they shall be safe and sanitary for their intended use and occupancy.

Cooke contends the violation of R.C. 3781.06(A) constituted negligence per se.

{¶32} In *Rigdon v. Great Miami Valley YMCA*, 2007-Ohio-1648 (12th Dist.), the Twelfth District Court of Appeals considered R.C. 3781.06(A) and whether it created a statutory duty so that a violation constituted negligence per se. It held:

> Upon reviewing R.C. 3781.06(A)(1), we find that unlike the statutory requirement at issue in *Sikora [v. Wenzel,* 88 Ohio St.3d 493, 2000-Ohio-406], it only contains a general, abstract description of a duty for the safety of others. R.C. 3781.06(A)(1) only imposes a general or abstract duty to provide safe and sanitary buildings for their intended use and occupancy, but it does not make any specific act or conduct violative of the statute. *See Larson v. Cleveland Ry. Co.* (1943), 142 Ohio St. 20. As a result, we find that a violation of R.C. 3781.06(A)(1) does not constitute negligence per se. It follows then that this case is not controlled by *Crawford* [*v. Wolfe*, 2002-Ohio-6163 (4th Dist.)] and that the open and obvious doctrine is applicable.

*Rigdon v. Great Miami Valley YMCA*, 2007-Ohio-1648, ¶ 19 (12th Dist.), *appeal not accepted*, 2007-Ohio-3699.

{¶33} In this case, pursuant to *Lang v. Holly Hill Motel, Inc.*, 2009-Ohio-2495, we do not find the Ohio Building Code violations cited by Cooke in her expert reports constitute negligence per se. Further, R.C. 3781.06(A) cannot serve as a basis for a statutory violation in this case to support a finding of negligence per se.

**Attendant Circumstances**

{¶34} The final consideration of Cooke's claims is whether there were attendant circumstances to prevent Cooke from navigating the step-down from the platform, thereby excluding her claims from the open and obvious doctrine. An exception to the open and

obvious doctrine is the existence of attendant circumstances. *Thornsley v. Lafferty's Coin-Op Laundry, LLC*, 2022-Ohio-3907, ¶ 43 (5th Dist.). Attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger, and "may create a genuine issue of material fact as to whether a hazard is open and obvious." *Mulcahy v. Best Buy Stores, LP*, 2014-Ohio-1163, ¶ 19 (5th Dist.) quoting *Aycock v. Sandy Valley Church of God*, 2008-Ohio-105 at ¶ 26. There is no precise definition of attendant circumstances. *Carter v. Miles Supermarket*, 2010-Ohio-6365, ¶ 18 (8th Dist.). Attendant circumstances are factors that contribute to a fall and are beyond the injured person's control. *Kraft*, 2012-Ohio-5502 at ¶ 24. Attendant circumstances refer to all facts relating to the event, such as time, place, surroundings or background, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result. (Internal citations omitted.) *Johnson v. Southview Hosp.*, 2012-Ohio-4974, ¶ 17 (2nd Dist.) citing *Collier v. Libations Lounge, L.L.C.*, 2012-Ohio-2390, ¶ 16 (8th Dist.). The analysis of attendant circumstances uses an objective test, and the court should not consider the particular actions of the parties in the case. *Jacobsen*, 2011-Ohio-3563 at ¶ 20. Attendant circumstances do not include any circumstance existing at the moment of a fall, unless the individual was distracted by an unusual circumstance created by the property owner. *Kraft*, 2012-Ohio-5502 at ¶ 24 citing *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 498 (1st Dist.1996).

{¶35} Cooke argues that attendant circumstances contributed to her fall and prevented her from successfully navigating the step-down from the platform. Cooke was sitting on the couch in the platform waiting area for thirty minutes before the staff person

returned to the property. In her deposition, Cooke testified that the staff person came through the property entrance and walked behind the business counter, located by the store entrance. Cooke remained seated on the couch. Once the staff person got behind the business counter, she asked Cooke if Cooke was there to see her:

Q. So you were talking across the space.

A. Yes.

Q. And what did you say to her?

A. I said yes. And then she went like come on up (indicating).

Q. So she waived [sic] you over?

A. Yes.

* * *

Q. Which you then did?

A. Yes.

Q. And then what happened?

A. I was looking at her and forgot to step.

* * *

Q. All right. So you missed the step?

A. Yes.

(Cooke Deposition, p. 58-59). Cooke's human factors expert opined that at the time of the incident, "Ms. Cooke's attention and visual focus were directed specifically at a staff person behind the counter waving her over, the unsafe, deficient, and non-Code-compliant nature of the step that caused her fall and injury was neither open nor obvious to her." (Zimmerman Expert Report). Cooke's expert also noted with an illustration that

(1) Cooke's downward line of sight was obstructed by her own body, (2) Cooke's line of sight was directed at a staff person behind the counter across the room, (3) Cooke's attention was focused on that staff person, who was waving her to come over, (4) Cooke's normal range of view was limited to the counter, staff person, and immediate vicinity, and (5) there was nothing in Cooke's range of vision that could alert her of the imperceivable step. (Zimmerman Expert Report.).

{¶36} An attendant circumstance must be an "unusual circumstances of the property owner's making." *Thornsley v. Lafferty's Coin-Op Laundry, LLC*, 2022-Ohio-3907, ¶ 46 (5th Dist.) citing *Haller v. Meijer*, 2012-Ohio-670, ¶ 10 (10th Dist.) citing *McConnell v. Margello*, 2007-Ohio-4860, ¶ 17 (10th Dist.); *See also Alsbury v. Dover Chem. Corp.*, 2009-Ohio-3831 (5th Dist.). Attendant circumstances do not include regularly encountered, ordinary, or common circumstances. *Thornsley* at ¶ 46 citing *Johnson v. Southview Hosp.*, 2012-Ohio-4974, ¶ 17 (2nd Dist.) citing *Cooper v. Meijer*, 2007-Ohio-6086, ¶ 17 (10th Dist.).

{¶37} In this case, we find the facts alleged by Cooke do not create a genuine issue of material fact as to whether attendant circumstances existed to prevent the hazard from being open and obvious. Cooke states that speaking to the staff person, having that staff person gesture to her, and looking at the staff person were attendant circumstances that caused her to miss the step. Looking at and communicating with a staff person are regularly encountered, ordinary, and common circumstances in a store. Cooke communicated with the staff person after she had successfully navigated the step up to the platform and sat on the couch for thirty-minutes where the platform and property were in her full view. Cooke did not receive a tattoo or piercing, which may cause a person to

be distracted. Cooke's expert opined that Cooke's own body obstructed her downward line of sight. This is not an unusual circumstance of the Tenant or Landlord's own making to create an attendant circumstance.

{¶38} In this case, we agree with the trial court that under an objective analysis, reasonable minds could only conclude there were no attendant circumstances to negate the open and obvious doctrine.

{¶39} Because the platform step was open and obvious, negligence per se is inapplicable, and there were no attendant circumstances, Tenant and Landlord owed no duty to protect or warn Cooke of the danger posed by the platform step-down. We therefore agree with the trial court that Tenant and Landlord were entitled to judgment as a matter of law on Cooke's claims of negligence and nuisance.

{¶40} Cooke's sole Assignment of Error is overruled.

## CONCLUSION

{¶41} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Hoffman, J., concur.